IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 5:22-cr-40050-HLT |
| FATIMA JAGHOORI and HABIBULLAH JAGHOORI, | |
| Defendants. | |

**MEMORANDUM AND ORDER**

Fatima Jaghoori purchased two firearms in 2021. She filled out the required ATF Form 4473. Question 21.a. on the form asked whether she was "the actual transferee/buyer of the firearm(s)," and she answered affirmatively. But she was not the actual purchaser and instead bought the firearms for her brother Habibullah Jaghoori because she got a discount on the price. Neither was prohibited from purchasing a firearm. The grand jury indicted Fatima for violating 18 U.S.C. § 922(a)(6), which criminalizes materially false statements made while acquiring a firearm. And the grand jury indicted Fatima and Habibullah for conspiracy to have Fatima violate § 922(a)(6).

Defendants jointly move to dismiss the charges. Defendants contend that Fatima's false statement was not material to the sale of the firearms because the Second Amendment under *New York State Rifle & Pistol Assoc., Inc. v. Bruen*, 142 S. Ct. 2111 (2022), protects Habibullah's ability to use his sister as a "strawman" to buy firearms for him. Form 4473 therefore can't condition the sale of the firearms on whether Fatima was the actual buyer. The Court disagrees. Defendants are not charged with buying firearms in a strawman sale. They are charged with lying and conspiring to lie on a government form. This conduct does not implicate the Second Amendment or *Bruen*.

1

And there is no constitutional problem with treating Fatima's false answer as criminal despite her Second Amendment complaints about Form 4473's prohibitive effect on straw purchases. The Court denies the motion.

I.      BACKGROUND[1]

Fatima bought two firearms at Godfrey's Indoor Shooting and Archery Ranges in Junction City, Kansas on March 22, 2021. Godfrey's maintains a Federal Firearms License ("FFL") issued by the Bureau of Alcohol, Tobacco, Firearms, and Explosives' ("ATF"). Fatima thus completed ATF Form 4473 during the transaction. Question 21.a. on the form asks:

> Are you the actual transferee/buyer of the firearm(s) listed on this form and any continuation sheet(s) (ATF Form 5300.9A)?
> **Warning: You are not the actual transferee/buyer if you are acquiring the firearm(s) on behalf of another person. If you are not the actual transferee/buyer, the licensee cannot transfer the firearm(s) to you.**
> Exception: If you are only picking up a repaired firearm(s) for another person, you are not required to answer 21.a and may proceed to question 21.b.

Fatima attested and certified that she was the actual transferee/buyer. But this statement wasn't true. She was buying the firearms for her brother Habibullah because she got a discount. Habibullah provided Fatima with money. And Fatima bought the firearms at the discounted price. She then gave the firearms to Habibullah. Neither Fatima nor Habibullah was prohibited from purchasing firearms at the time of the transaction.

A grand jury indicted Defendants on August 17, 2022. Count I charges Defendants under 18 U.S.C. § 371 for conspiring to violate 18 U.S.C. § 922(a)(6). Count II charges Fatima with violating § 922(a)(6). Defendants move to dismiss these charges under Fed. R. Crim. P. 12(b)(3).

---

[1] The relevant background is drawn from the allegations in the indictment and an additional set of facts that the parties agree are true.

**II.     STANDARD**

Rule 12(b)(3)(B)(v) allows a court to dismiss a charge for failure to state an offense. The court can consider facts outside an indictment in deciding a Rule 12(b)(3) motion if the motion's "operative facts" are not in dispute, the government hasn't objected to the court's consideration of those facts, and the court can conclude from those facts that the government cannot prove its case beyond a reasonable doubt. *United States v. Chavez*, 29 F.4th 1223, 1226 (10th Cir. 2022).

**III.    ANALYSIS**

Defendants contend that the government fails to state a claim because Question 21.a.'s effective prohibition on straw transactions is unconstitutional under the Second Amendment after *Bruen* and therefore Fatima's false answer to that question was not material within the meaning of § 922(a)(6). The Court disagrees for the following reasons.

The Second Amendment states: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. The Supreme Court has discussed this amendment in several recent decisions. In *District of Columbia v. Heller*, the Supreme Court explained that the "core" of this right was the "right of law-abiding, responsible citizens to use arms in defense of hearth and home." 554 U.S. 570, 634-35 (2008). But the Court then emphasized that the right "is not unlimited" and "nothing in [the] opinion should be taken to cast doubt on . . . laws imposing conditions and qualifications on commercial sale of arms." *Id.* at 626-27. A plurality of the Supreme Court reaffirmed this view in *McDonald v. City of Chicago*, noting that *Heller* "did not cast doubt on such longstanding regulatory measures as prohibitions on the possession of firearms by felons." 561 U.S. 742, 767-68 (2010).

3

The Supreme Court again discussed the Second Amendment in *Bruen*. The Supreme Court explained that the following standard must be used to analyze the constitutionality of firearms regulations under the Second Amendment:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command.

142 S. Ct. at 2129-30 (cleaned up).

Since *Bruen* lower courts start by asking whether the Second Amendment's plain text covers the conduct being regulated. *Id.* If it does, then the Second Amendment presumptively protects that conduct and the government bears the burden to justify its regulation by showing that the regulation is consistent with the historical tradition of firearm regulation in this United States. *Id*.

The motion is dense, but Defendants generally attempt to use this framework to argue that Question 21.a.'s regulation on strawman purchases runs afoul of the Second Amendment. The argument goes that Form 4473 conditions the purchase of a firearm on an affirmative answer to Question 21.a. Someone trying to buy the firearm therefore must be the actual buyer/transferee of the firearm. Both Fatima and Habibullah were able to buy firearms on March 21, 2021. And a truthful answer to Question 21.a. by Fatima would have prevented Habibullah from using her as a strawman to buy firearms for him. Defendants thus contend that straw-purchasing arrangements like this one are covered by the Second Amendment's plain text and are presumptively protected. Defendants further argue that the government can't justify this regulation because there are not any analogues for a regulation like this in the historical tradition of firearm regulation in the United States.

This argument is incorrect because it misconstrues the underlying criminal conduct (i.e., the conduct being regulated). Fatima is charged under § 922(a)(6), which criminalizes making a materially false statement during the purchase of a firearm. And Defendants are charged under § 371 for conspiring to violate § 922(a)(6). The criminal conduct at-issue is not the acquisition of firearms through a straw purchase. The criminal conduct at-issue is conspiring to lie on (and then lying on) a government form. Stated differently, the charging statutes do not criminalize Defendants' possession of a firearm in any way. The statutes criminalize making (or conspiring to make) false statements. *United States v. Peavler*, 2023 WL 5916905, at *1-2 (E.D. Okla. 2023). The plain text of the Second Amendment does not protect this conduct because it says nothing about the consequences of conspiring to engage in criminal fraud and then engaging in criminal fraud. *Id.* at *2.

This conclusion is consistent with other federal courts who have resolved similar challenges to charges brought under § 922(a)(6). *See, e.g., United States v. Reilly*, 2023 WL 5352296, at *2 (E.D. Okla. 2023); *United States v. Soto*, 2023 WL 1087886, at *2-6 (W.D. Tex. 2023); *United States v. Valentine*, 2023 WL 2571720, at *7 (N.D. Ind. 2023); *United States v. Gonzalez*, 2022 WL 17583769, at *1 (D. Utah 2022).[2]

There are other problems with Defendants' argument. Defendants assume that if Question 21.a.'s prohibitory effect on straw purchases violates the Second Amendment then Fatima's answer to that question is immaterial such that she could have answered it in any way that she liked. This isn't right.

---

[2] This outcome is also consistent with the Supreme Court's recent Second Amendment jurisprudence in that *Bruen* seemingly left undisturbed the Supreme Court's pronouncement in *Heller* that "longstanding regulatory measures" were not being called into question. It is also notable that *Bruen* did not even mention *Abramski v. United States*, 573 U.S. 169 (2014), which was decided after both *Heller* and *McDonald* and which dealt with the very statute at issue in this case.

A "false statement" is "material" under § 922(a)(6) if it affects a firearms dealer's determination that it is making a lawful sale. *United States v. Holden*, 70 F.4th 1015, 1017-18 (7th Cir. 2023); *see Abramski*, 573 U.S. at 188-89. There is no doubt that the information Question 21.a. requests about the identity of a firearm's "actual purchaser" is material as a matter of statute. *Abramski,* 573 U.S. at 188-89. The Gun Control Act "contemplates that the dealer [who sells the firearms] will" use the information provided on Form 4473 to "check the true purchaser's identity and eligibility for gun ownership." *Id.* at 188. But straw transactions conceal the identifying information about the "actual buyer" from the dealer. This situation:

> prevent[s] the dealer from transacting with the [actual buyer] face-to-face, see § 922(c), recording his name, age, and residence, see § 922(b)(5), inspecting his photo ID, see § 922(t)(1)(C), submitting his identifying information to the background check system, see § 922(t)(1)(B), and determining whether he was prohibited from receiving a firearm, see § 922(d).

*Id.* The upshot is that Fatima "thwarted application of essentially all of the firearms law's requirements" by certifying that she was the "actual buyer" of the firearms. *Id.* at 188-89. Indeed, there can "hardly" be a "misrepresentation more material to a sale's legality" when analyzed from the perspective of the Gun Control Act's statutory and regulatory framework. *Id.* This is because the identity of the actual buyer is the predicate for essentially every other question.

Thus, a Second Amendment problem with Question 21.a.'s regulatory effect on straw purchases does not strip a false response of its materiality or give a firearm purchaser like Fatima the freedom to answer this question however she pleases. *See United States v. Combs*, 2023 WL 2144150, at *2 (E.D. Ky. 2023) (holding that the unconstitutionality of § 922(g)(8) could "shield" defendant's "prosecution under that section," but was "not a ground for challenging the materiality of his alleged false statements under [§] 922(a)(6)"). Instead, the law is firm that "false statements may be punished even when the government is not entitled to demand answers—when, for

example, compelling a truthful statement would incriminate the speaker." *Holden*, 70 F.4th at 1017 (citing *United States v. Kapp*, 302 U.S. 214, 218 (1937), *Dennis v. United States*, 384 U.S. 855, 866-67 (1966), and *United States v. Knox*, 396 U.S. 77, 79 (1969)). The inclusion of the "word 'material' in § 922(a)(6) does not create a privilege to lie, when the answer is material to a statute, whether or not that statute has an independent constitutional problem." *Id*.; *Peavler*, 2023 WL 5916905, at *2-3; *United States v. Isler*, 2023 WL 5600931, at *2 (W.D. Okla. 2023).

Defendants can't use a collateral attack on the constitutionality of Question 21.a. as a vehicle for escaping liability under § 922(a)(6). There are ways to challenge to the constitutionality of Question 21.a. under our legal system. Fatima "was not, however, permitted to lie on the ATF Form and then, if and when [her] lie was detected, attempt to circumvent criminal liability by subsequently challenging the constitutionality" of the ATF Form's questions. *Peavler*, 2023 WL 5916905, at *3. The present proceeding is not the one in which to litigate whether Question 21.a. violates the Second Amendment. *Id.* (citing *Holden*, 70 F.4th at 1018).

**IV.   CONCLUSION**

The Court has considered the argument and denies the motion.

THE COURT THEREFORE ORDERS that Defendants' 12(b)(3)(B) motion to dismiss (Doc. 36) is DENIED. The Court also CANCELS the October 25, 2023 evidentiary hearing and oral argument as it is unnecessary to the resolution of this motion. The December 12, 2023 status conference remains as scheduled.

IT IS SO ORDERED.

Dated: October 18, 2023         /s/ *Holly L. Teeter*
                                HOLLY L. TEETER
                                UNITED STATES DISTRICT JUDGE